**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**UNITED STATES OF AMERICA**                        **CRIMINAL NO. 12-106**

**VERSUS**

**REGINALD R. HARPER**                             **SECTION "G" (3)**
**TROY A. FOUQUET**


## ORDER AND REASONS

  Before the Court is the United States' Motion and Incorporated Memorandum to Require

Immediate Payment of Restitution.[1] After considering the pending motion, the memorandum in

support, and the memoranda filed by defendants Reginald Harper ("Harper") and Troy Fouquet

("Fouquet"), the record, and the applicable law, the Court will grant the pending motion.

## I. Background

  A detailed factual background in this matter has already been laid out by this Court

elsewhere,[2] and is not necessary for the purposes of the pending motion. In short, On February 15,

2012, the defendants were charged by a one-count Bill of Information with conspiracy to commit

bank fraud.[3] Both defendants waived their right to be charged by indictment.[4] On March 15, 2012,

Fouquet pled guilty before this Court at his rearraignment as to the one-count Bill of Information.[5]

---

[1] Rec. Doc. 125.

[2] Rec. Doc. 124.

[3] Rec. Doc. 1.

[4] Rec. Doc. Nos. 16, 22.

[5] Rec. Doc. 29.

On April 26, 2012, Harper entered a plea of guilty as to the one-count Bill of Information at rearraignment.[6] On March 15, 2013, this Court held a loss calculation hearing where the Court was presented with testimony and evidence regarding the loss sustained by First Community Bank ("FCB") as a result of the defendants' crimes for the purposes of restitution and sentencing. The defendants were sentenced on April 4, 2013, and on the same day this Court issued an Order and Reasons outlining its finding that the defendants' fraud caused $570,955.21 of damage to FCB, and therefore they were responsible to pay this amount in restitution.[7] At the sentencing hearing the parties requested an opportunity to brief the issue of how the mandatory restitution should be repaid. The Court allowed the parties until April 11, 2013 to file their memoranda.

On April 11, 2013, the United States filed the pending motion.[8] On the same day, Harper filed a memorandum for apportionment and payment of restitution.[9] Additionally, on April 11, 2013, Fouquet filed a memorandum addressing the payment of restitution.[10]

## II. Parties' Arguments

The United States requests the immediate payment of the full restitution amount.[11] The United States argues that the Mandatory Victim Restitution Act ("MVRA")[12] reflects a "pro-victim"

---

[6] Rec. Doc. 35.

[7] Rec. Doc. 124 at p. 18.

[8] Rec. Doc. 125.

[9] Rec. Doc. 126.

[10] Rec. Doc. 127.

[11] Rec. Doc. 125 at p. 1.

[12] 18 U.S.C. §§ 3663A.

congressional intent.[13] Further, the United States avers that pursuant to 18 U.S.C. § 3664(f)(1)(A) this Court must order the full amount of restitution without regard for the defendants' ability to pay.[14] The United States also notes that this section lists several factors that a Court must take into account when fashioning a payment schedule: (1) the financial resources and other assets of the defendants; (2) projected earnings and other income of the defendant; and (3) any financial obligations of the defendant.[15]

The Government claims that the MVRA grants wide latitude to district courts in setting a restitution schedule, including an order for a lump sum payment. Further, the United States contends that by referencing 18 U.S.C. § 3572, the statute addressing fines and other monetary penalties, the MVRA "creates a preference for immediate payment of restitution."[16] As such, the United States requests the immediate payment of the entire restitution amount. The Government notes that in the final presentence report, Harper's net worth was calculated to be nearly $2 million.[17] The United States also notes that many of these assets are "readily obtainable by Harper" and therefore he has sufficient means to pay restitution.[18]

In the memorandum submitted by Harper, he first acknowledges this Court's authority under 18 U.S.C. § 3664(h) to apportion liability and hold each defendant liable for the full amount of

---

[13] Rec. Doc. 125 at p. 2 (citing *United States v. Perry*, 360 F.3d 519, 524 (6th Cir. 2004)).

[14] *Id.* at p. 3.

[15] *Id.* at pp. 3-4 (citing 18 U.S.C. § 3664(f)(2)(A)-(C)).

[16] *Id.* at p. 4 (citing *United States v. Hosking*, 567 F.3d 329, 336 (7th Cir. 2009)).

[17] *Id.* (citing Rec. Doc. 116 at ¶ 70).

[18] *Id.*

restitution.[19] However, Harper requests that this Court apportion liability so that each defendant is only liable for half the amount of the total restitution ordered.[20] Harper argues that it would be "inequitable" for him to pay more than half of the restitution.[21] Harper contends that he did not profit from the fraud, but rather it was Fouquet who received a "windfall" from their fraud as the bank suffered losses.[22] As such, Harper claims that "there is a strong argument that Mr. Fouquet should bear 100% of the restitution obligation."[23] However, Harper acknowledges that Fouquet may not be able to pay the full amount of restitution, and therefore suggests that both defendants be held liable for one half of the $570,955.71 amount this Court ordered in restitution.[24]

Harper also notes that he is exposed to additional liability that Fouquet is not. Harper explains that the FDIC is seeking a civil monetary penalty against him that could reach upwards of $100,000. Harper argues that "[b]ecasue Mr. Harper is facing these additional penalties (and Fouquet is not exposed to any such penalties), it would be inequitable for Mr. Harper to have to pay more than half of the restitution amount."[25] Further, Harper contends that he would be subjected to additional hardship if he were held liable for more than half of the restitution, because he would be forced to liquidate many of his assets and would incur additional tax obligations and lower net proceeds.[26]

---

[19] Rec. Doc. 126 at p. 2.

[20] *Id.*

[21] *Id.* at p. 3.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at pp. 3-4.

In the alternative, Harper puts forward his own proposal for payment. Harper explains that he currently owns 14,625 shares of FCB stock. At the loss calculation hearing, it was revealed that Investar Bank is in negotiations to purchase FCB, with a likely closing date of May 1, 2013.[27] Harper contends that in this transaction Investar will pay $8.50 worth of its own stock for each share of FCB stock. Therefore, Harper suggests that he immediately surrender his stock to FCB and be credited with payment of $124,312.50 (14,625 shares x $8.50) towards restitution.[28]

Next, Harper proposes he make a cash payment in the next 90 days. He suggests that this payment would include the $25,000 fine assessed to him, plus an additional cash payment of $161,165.36 in restitution.[29] Harper explains that when the value of the stock and cash payments are added together, this accounts for one half of the restitution ordered by this Court.[30] Harper asks that if the Court declines to divide the defendants's restitution obligation as requested, that he still be allowed to use the FCB stock toward restitution and further be permitted to pay any remaining amount in cash over a period of time.[31]

In the memorandum submitted by Fouquet, he begins by stating that the purpose of restitution is not to punish the victims, but rather to compensate the victims for their losses.[32] Therefore, Fouquet claims that "fairness among the defendants is of no concern."[33] Fouquet argues that when

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at p. 5.

[31] *Id.*

[32] Rec. Doc. 127 at p. 1.

[33] *Id.* at p. 2.

a Court determines that a defendant is unable to make full payment on the restitution amount in the foreseeable future, it may enact a schedule of payments so that the defendant may pay over time.[34] Fouquet notes that this Court previously found that he was not able to pay a fine, and claims that he is likewise unable to make immediate payment on restitution, "or anything more than nominal periodic payments, despite his business interest that was disclosed at sentencing."[35]

Fouquet claims that he is not privy to the financial situation of Harper, but argues that the Court should fashion the timing and manner of payment "consistent with 18 USC [§] 3663A, prioritizing the victim, disregarding irrelevant perceptions of fairness amongst the defendants, and taking into account Fouquet's inability to make significant payments."[36] Therefore, Fouquet requests that it hold the defendants jointly and severally liable for the restitution amount, require Harper to pay as "it sees fit under law, and allow Foquet to make nominal periodic payments in conjunction with scheduled payments by Harper to any amount outstanding after any immediate or pre-self-reporting discharge by Harper."[37]

### III. Law and Analysis

The parties dispute two distinct aspects of how the restitution amount will be paid: (1) the timing of payments; and (2) the apportionment of liability among the defendants.[38] Once this Court determined that the defendants' fraud directly caused a loss to FCB, it was required to "order

---

[34] *Id.* (citing 18 U.S.C. § 3664(f)(3)(B)).

[35] *Id.*

[36] *Id.* at pp. 2-3.

[37] *Id.* at p. 3.

[38] While the defendants are free to argue these issues, the Court would note that both defendants waived the right to challenge collaterally or on direct appeal any aspect of their guilty pleas or sentence, including issues relating to restitution, except for ineffective assistance of counsel or if the Court imposed a sentence in access of the statutory maximum. Rec. Doc. 30 (Fouquet's plea agreement); Rec. Doc. 38 (Harper's plea agreement).

restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."[39] "A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments."[40] When crafting a restitution schedule, a court should consider:

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.[41]

Further:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.[42]

In regard to the timing of restitution payments, and in consideration of the three above-mentioned factors, this Court finds that immediate payment of restitution is appropriate. First, Harper and Fouquet, when considered together, have considerable assets that far exceed the total amount of restitution owed. Harper's total net worth was estimated in the presentence report at $1,815,596.00.[43] Fouquet's net worth was estimated as  considerably less in the presentence report at $24,999.00.[44] However, at the loss calculation hearing, and in his memorandum, Fouquet acknowledged the

---

[39] 18 U.S.C. § 3664(f)(1)(A).

[40] 18 U.S.C. § 3664(f)(3)(A).

[41] 18 U.S.C. § 3664(f)(2)(A)-(C).

[42] 18 U.S.C. § 3664(h).

[43] Rec. Doc. 116 at p. 15.

[44] Rec. Doc. 117 at p. 17.

existence of several assets he owns that were not included in the presetence report, which would increase his net worth.[45] Considered together, the defendants have ample assets to immediately pay the total amount of restitution. Further,  according to the presentence report, Harper now received $9,290.66 in monthly income, $2,923.32 coming from a salary.[46] While he will be unable to earn his salary while incarcerated, his household will continue to receive substantial monthly income. According to Fouquet's presentence report, Fouquet's monthly income has been listed as $5,000 from "business income," which is not a salary and he can continue to earn during his incarceration.[47] The Court also notes that the newly revealed assets and business interests mentioned above have not been incorporated into this figure, and therefore the Court is unable to fully address this element. Finally, regarding the defendants' other financial obligations,  the presentence report indicates that Harper's monthly cash flow, after monthly expenses, is still $4,380.66.[48]  However, the presentence report for Fouquet states that his monthly expenses exceed his income.[49] Again, this calculation does not account for the previously unknown assets and income of Fouquet. Nonetheless, this Court finds that the defendants, when considered together, have adequate assets to immediately pay restitution.

The remaining issue is whether these the defendants should be held jointly and severally liable for the total amount of restitution. As previously acknowledged, this Court has the discretion to hold both defendants' jointly and severally liable or to apportion liability.[50] The United States

---

[45] Rec. Doc. 127 at p. 2.

[46] Rec. Doc. 116 at p. 14.

[47] Rec. Doc. 117 at p. 16.

[48] Rec. Doc. 116 at p. 16.

[49] Rec. Doc. 117 at pp. 17-18.

[50] *See* 18 U.S.C. § 3664(h).

Court of Appeals for the Sixth Circuit has acknowledged that the statue making restitution mandatory evidence a "pro-victim" congressional attitude, which seeks to make the victim whole.[51] Further, in the specific context of 18 U.S.C. § 371, the crime the defendants' have pled guilty to, the Fifth Circuit has stated that "[i]t is well-established that, as a participant in the []conspiracy, [a defendant] is legally liable for all the actions of h[is] co-conspirators in furtherance of this crime." and therefore joint and several liability is appropriate.[52]

Taking into account these considerations, the Court finds it appropriate to hold both defendants jointly and severally liable for the ordered restitution. FCB, as the victim bank, is entitled by law to the money this Court has found the defendants' fraud caused. Holding the defendants jointly and severally liable is the best way that this Court can ensure that FCB receives all the money it is due as quickly as possible. The Court finds Harper's arguments advocating that each defendant be held liable for only half of the restitution amount unavailing. Harper claims that holding him and Fouquet jointly liable would be unjust, as he might pay more than his fair share. However, 18 U.S.C. § 3664(h) specifically contemplates this scenario and allows for joint and several liability. Further, while "fairness" among the defendants is a consideration, it is trumped by FCB's entitlement to restitution. While perhaps burdensome to Harper, these are the consequences of his fraud.

Second, Harper argues that joint and several liability should not be imposed because he is also exposed to additional civil liability from the FDIC, which Fouquet is not. This potential liability does not offset his obligation to pay restitution. Being in violation of other laws or regulations is not a compelling reason to lessen Harper's liability in this criminal proceeding. Therefore, the Court will

---

[51] *Perry*, 360 F.3d at 524.

[52] *United States v. Chaney*, 964 F.2d 437, 453-54 (5th Cir. 1992).

9

hold Harper and Fouquet jointly and severally liable for the entire restitution amount.

Finally, Harper has requested that regardless of how much or when he must pay, that he be allowed to surrender his FCB stock as part of his restitution payment. Harper proposes a value for his shares based upon what he claims is the price a purchasing bank, Investar, is offering for all FCB stock. The Court has no way of knowing if this transaction will come to fruition or if the value stated by Harper is accurate. Further, the Court is in no position to determine how the proposed stock surrender would affect FCB financially. In light of these uncertainties, the Court is wary to allow such a transaction. Therefore, the Court will not allow Harper's proposal of stock surrender for restitution purposes.

### IV. Conclusion

For the reasons stated above, the Court finds it appropriate to require restitution to be paid immediately, and to hold Harper and Fouquet jointly and severally liable. Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion and Incorporated Memorandum to Require Immediate Payment of Restitution[53] is **GRANTED** and that the full amount of $570,955.71 be paid immediately to FCB;

**IT IS FURTHER ORDERED** that both defendants are jointly and severally liable;

**IT IS FURTHER ORDERED** that the United States Attorney's office and the United States Probation office be responsible for collection and the enforcement of this order;

---

[53] Rec. Doc. 125.

**IT IS FURTHER ORDERED** that all restitution be made to: U.S. Clerks's Office, Attn:

Financial Section, 500 Poydras Street, Room C-151, New Orleans, Louisiana, 70130.

New Orleans, Louisiana, this ___12th___ day of April, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

**PLEASE SERVE:**

**UNITED STATES PROBATION OFFICE**
**500 POYDRAS STREET, 5TH FLOOR**
**HALE BOGGS BLDG.**
**NEW ORLEANS, LOUISIANA, 70130**